UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| HEATHER VERRIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:20-cv-00443-JAW |
| | ) | |
| BLUETRITON BRANDS INC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER**

A defendant brings a motion for leave to amend its answer to assert statutory damages caps under the Maine Human Rights Act as an affirmative defense. The Court exercises its discretion and grants the defendant's motion because of the current status of the proceedings, the absence of unfair prejudice to the plaintiff, and the policy decision of the state legislature to impose statutory caps on this type of claim.

**I.   BACKGROUND**

On October 21, 2020, Heather Verrier filed a two-count complaint in state of Maine superior court against Nestle Water North America Inc., d/b/a Poland Springs Company (BTB),[1] alleging a hostile work environment and retaliation under the Maine Human Rights Act (MHRA). *State Ct. R.* (ECF No. 8), Attach. 2, *Pl.'s Compl. for Discrimination, Retaliation* at 5-6 (*Compl.*). On August 12, 2022, the Court issued

---

[1]   On April 9, 2021, Nestle Waters North America Inc. changed its name to BlueTriton Brands, Inc. *Def.'s Opp'n to Pl.'s Mot. to Am. the Compl.* (ECF No. 33), Attach. 1, *Certification of Delaware Secretary of State*. The Court will thus refer to the defendant as BTB.

an order on BTB's motion for summary judgment, denying summary judgment on Ms. Verrier's sexual harassment hostile work environment claim but granting summary judgment on her retaliation and constructive discharge claims. *Order on Mot. for Summ. J.* (ECF No. 100).[2]

On September 13, 2022, BTB moved for leave to file a second amended answer to Ms. Verrier's Amended Complaint. *Def.'s Mot for Leave to File Second Am. Answer to Pl.'s Am. Compl.* (ECF No. 103) (*Def.'s Mot*). On September 19, 2022, Ms. Verrier filed her response in opposition to BTB's motion. *Pl.'s Opp'n to Def.'s Mot. for Leave to Amend its Answer to Pl.'s Compl.* (ECF No. 106) (*Pl.'s Opp'n*). On September 22, 2022, BTB filed its reply. *Def.'s Reply in Supp. of Def.'s Mot. for Leave to File Second Am. Answer to Pl.'s Am. Compl.* (ECF No. 111) (*Def.'s Reply*).

## II. THE PARTIES' POSITIONS

### A. BlueTriton Brands' Motion for Leave to Amend

BTB moves to make only one amendment to its current answer: to "assert[] an additional affirmative defense,[3] premised upon the [district c]ourt's *Bell v. O'Reilly Auto Enterprises* decision and the highest damages cap contained in the MHRA." *Def.'s Mot.* at 2 (citing *Bell v. O'Reilly Auto Enterprises,* No. 1:16-cv-00501-JDL, 2022 U.S. Dist. LEXIS 45802 (D. Me. Mar. 15, 2022)). It concedes that a party may amend its pleading after the right to freely amend has expired "only with the opposing party's written consent or the court's leave," *id.* (quoting FED. R. CIV. P. 15(a)(2)), and by

---

[2] The Court need not here recount in detail this case's procedural and factual background, which it explored in exhaustive depth in the 141-page Order on summary judgment.

[3] The proposed additional affirmative defense reads: "Plaintiff's damages, if any, are limited to the statutory cap applicable to Plaintiff's claims under 5 M.R.S.A. § 4613(2)(B)(8)(e)(iv) because Defendant employs more than 500 employees." *Def.'s Mot.* at 2 n.3.

2

this point in the litigation a party must show "good cause" to amend its pleading. *Id.* (citing *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)).

BTB bases its good cause argument on *Bell*, a decision by Chief Judge Jon D. Levy of this district "den[ying] the defendant's post-trial motion to reduce a jury verdict that was in excess of the Americans with Disabilities Act's and M[aine] H[uman] R[ights] A[ct]'s statutory damages caps because the defendant did not plead the damages caps as affirmative defenses in its answer." *Def.'s Mot.* at 3 (citing *Bell*, 2022 WL 782784 at *1-4). *Bell* required defendants to affirmatively plead "statutory limitations on liability–including damage caps–as affirmative defenses" or such defenses are waived, and the district court did not distinguish between federal and state law on the question of waiver. *Id.* (quoting *Bell*, 2022 WL 782784, at *1).

BTB also notes that subsequent opinions by courts in this district have found that this change "represented a significant clarification for many practitioners" and granted defendants' late-state motions to amend to add the statutory damages caps as affirmative defenses. *Id.* at 3 (citing *Tourangeau v. Nappi Distribs.*, No. 2:20-cv-00012-JAW, 2022 U.S. Dist. LEXIS 105623 (D. Me. June 14, 2022) and *Tucker v. Lantmannen Unibake USA*, Inc., No. 2:21-cv-00087-JAW, 2022 U.S. Dist. LEXIS 89975, at *2 (D. Me. May 19, 2022)). It argues that its motion is analogous to the defendants' motions in *Tucker* and *Nappi* and does not prejudice Ms. Verrier. *Id.* at 4-5. Accordingly, BTB argues that it has established "good cause" for granting the motion to amend. *Id.* at 5.

3

### B.     Heather Verrier's Response in Opposition

In a brief response, Ms. Verrier counters that the Court should deny BTB's motion because "(1) Defendant has not established the requisite good cause and (2) prejudice to Plaintiff." *Pl.'s Opp'n* at 1. First, she argues that *Bell* is not—as BTB maintains—new law and instead is based on "longstanding First Circuit case law," and thus BTB "has not sustained its burden to establish the requisite good cause." *Id.* at 2. Second, Ms. Verrier contends that BTB's argument "ignores the obvious prejudice to Plaintiff," specifically that "if Plaintiff receives compensatory damages over the cap, Plaintiff is severely prejudiced because the damages more than $500,000 will be deducted from the award." *Id.* at 2-3.

### C.     BlueTriton Brands' Reply

In reply, BTB notes that Ms. Verrier's opposition fails to acknowledge its contention that *Nappi* and *Tucker* provide on-point precedent for granting its motion. *Def.'s Reply* at 1. Moreover, it argues that her emphasis on prejudice is misplaced because the "good cause" analysis focuses on "the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Id.* at 1-2 (quoting *Steir*, 383 F.3d at 12). What Ms. Verrier calls "prejudice" is actually "the loss of a chance to recover damages the Maine Legislature has determined, as a matter of public policy, to be excessive for her claim – in other words, a windfall." *Id.* at 2. Finally, she "points to no reliance, procedural disruption, additional work, delay, or other impact on her case that would make the granting of the Motion in any way unfair to her." *Id.*

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading "only with the opposing party's written consent or the court's leave" once the time to amend "as a matter of course" has passed. FED. R. CIV. P. 15(a)(2). Although "[t]he court should freely give leave [to amend] when justice so requires," *id.*, "[t]he liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases." *Thurlow v. York Hosp.*, No. 2:16-cv-179-NT, 2017 U.S. Dist. LEXIS 3187, at *8 (D. Me. Jan. 10, 2017) (alteration in *Thurlow*) (quoting 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (WRIGHT & MILLER)). A court may deny leave to amend if "the request is characterized by 'undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part.'" *Id.* at *8-9 (alteration in *Thurlow*) (quoting *Calderón-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 19 (1st Cir. 2013)). "Where the motion to amend is filed after the opposing party has timely moved for summary judgment, [the movant] is required to show 'substantial and convincing evidence' to justify a belated attempt to amend." *Steir*, 383 F.3d at 12 (quoting *Resolution Tr. Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994)). "Particularly disfavored are motions to amend whose timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy . . ..'" *Id.* (quoting *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52 (1st Cir. 1998)).

## IV.  DISCUSSION

The Court here confronts essentially the same question it faced in *Nappi*: in the wake of *Bell*, whether a defendant may amend its answer several months before trial to assert as an affirmative defense the MHRA's $500,000 statutory damages cap under 5 M.R.S. § 4613(2)(B)(8)(e)(i-iv).  In *Nappi*, the Court answered that question in the affirmative and does so again.  *See* 2022 U.S. LEXIS 105623, at *1 ("[T]he Court grants the defendant's motion to amend because of the relatively early stage of the proceedings, the absence of prejudice to the plaintiff, and the clear policy decisions of the national and state legislatures to impose statutory caps on these types of claims").

The Court will not fully reproduce its analysis from that case.[4]  However, it will recap several key points.

First, this Court determined that the *Bell* Court "concluded that a defendant waives the MHRA . . . damage cap[] by failing to assert [it] in its answer," *id.* at *10, but that there is no similar clear precedent under Maine law and, in granting leave to amend, the *Tucker* court noted that multiple defense counsel expressed surprise "at the idea of statutory damages caps being categorized as affirmative defenses." *Id.* at *13-14 (citing 2022 U.S. Dist. LEXIS 89975 at *1).  Here, as in *Tucker*, Ms. Verrier filed only a MHRA action, not a federal action.  *Compare Compl. at 1-6, Am. Compl. for Discrimination, Retaliation* at 1-6 (ECF No. 41); *with Tucker*, 2022 U.S. Dist.

---

[4] For a thorough explanation and analysis of the MHRA's statutory caps, their application as an affirmative defense under First Circuit and Maine law, the (lack of) prejudice caused by a moderate delay, and the "good cause" for asserting this affirmative defense after *Bell*, *see Nappi*, 2022 U.S. LEXIS 105623, at *8-22.

6

LEXIS 89975, at *1. In light of First Circuit precedent, the case for good cause is harder under federal law. *Nappi*, 2022 U.S. Dist. LEXIS 105623, at *12.

Second, in contrast to *Bell*, where the defendant only attempted to invoke statutory caps after the second jury trial, in *Nappi*, the defendant moved to assert them after its motion for summary judgment was ready for decision but before this Court ruled on it, a timeline the Court assessed would fit within the *Bell* Court's definition of a "moderate delay[]." *Id.* at *18 (citing 2022 U.S. Dist. LEXIS 45802, at *8). Even so, not all factors favor granting the motion to amend. The Scheduling Order set March 8, 2021, as the deadline for amending the pleadings, a deadline BTB violated. *Scheduling Order* at 2 (ECF No. 10). Nevertheless, the main consequence of failing to comply with a pleading amendment deadline is that the "liberal default rule is replaced by the more demanding 'good cause' standard of [Federal Rule of Civil Procedure] 16(b)." *Steir*, 383 F.3d at 12 (citing *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154-55 (1st Cir. 2004)). It is also correct that BTB moved to amend its pleading only after the motion for summary judgment had been decided, and it was required to show "'substantial and convincing evidence' to justify a belated attempt to amend [an answer]." *Id.* (quoting *Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994)). Given the violation of the Scheduling Order deadline and its filing only after the Court decided the motion for summary judgment, the question is whether BTB has met the *Steir* heightened standard for amendment.

Third and finally, despite "notable intransigence" by Nappi that "ma[de] its case for good cause less sympathetic and less effective," the Court still found good

7

cause and granted its motion to amend, in part because the statutory caps "represent the considered judgment of the United States Congress and the Maine Legislature in their legislative roles, striking a balance between the rights of employees against the responsibilities of employers" and "[i]f Nappi's motion to amend were denied, [the plaintiff] might obtain an award against Nappi greater than the amounts the national and state legislatures expressly intended. *Nappi*, 2022 U.S. Dist. LEXIS 105623, at *19, 22.

The same logic and analysis apply to this case. *Bell* may have surprised Maine lawyers in March 2022 by requiring that the caps be asserted as an affirmative defense in Maine law. *See Tucker,* 2022 U.S. Dist. LEXIS 89975, at *1. While BTB did not, like Nappi, move to assert this defense before the Court ruled on its summary judgment motion, on the spectrum of delay it falls closer to *Nappi* than to *Bell*, who waited five years and two jury trials before asserting the statutory caps as affirmative defenses. In the Court's view, the facts in this case reasonably fit within the *Bell* Court's characterization of a "moderate delay[]." 2022 U.S. Dist. LEXIS 45802, at *8. Unlike Nappi, BTB has not been intransigent, and, as in *Nappi*, "aside from the obvious result that any recovery under the MHRA . . . would become subject to the damages caps, [the plaintiff] has not demonstrated unfair prejudice or surprise." *Nappi*, 2022 U.S. Dist. LEXIS 105623, at *21. Finally, the Court again respects "the considered judgment of the United States Congress and the Maine Legislature" and recognizes that "[i]f [BTB's] motion to amend were denied, [Ms. Verrier] might obtain

8

an award against [BTB] greater than the amounts the national and state legislatures expressly intended. *Id.* at *22.

Another wrinkle in this case is that BTB filed its motion months after the district court issued the *Bell*, *Tucker* and *Nappi* opinions. The district court decided *Bell* on March 15, 2022, *Tucker* on May 19, 2022, and *Nappi* on June 14, 2022, but BTB waited until September 13, 2022, before filing its motion to amend. BTB has proffered no explanation why it waited until mid-September to make a motion that could (and perhaps should) have been made by mid-March. The more time since *Bell*, *Tucker* and *Nappi*, the less the surprise. *Steir*, 383 F.3d at 12 ("[T]he longer a [party] delays, the more likely the motion to amend will be denied").

Even so, here, there is no suggestion that Ms. Verrier has been unfairly prejudiced in the way the law interprets the phrase. As the First Circuit pointed out in *Steir*, the issue is not whether Ms. Verrier had been prejudiced but "whether [she] would have been unfairly so." *Id.* at 13. As noted earlier, in *Steir*, the First Circuit observed that "[p]articularly disfavored are motions to amend whose timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy. . ..'" *Id.* at 12. The only prejudice that Ms. Verrier asserted is the obvious prejudice that any verdict against BTB will be capped by the Maine statute. *Pl.'s Opp'n* at 2-3. Clearly to cap Ms. Verrier's potential award would be prejudicial to her, but it is not an unfair prejudice to apply Maine statutory law to her claim. Ms. Verrier has not argued that any of the *Steir* list of unfair prejudice —

9

re-opening of discovery with additional costs, significant postponement of trial, or a major alteration of trial tactics and strategy — would apply to the granting of BTB's motion to amend.

Indeed, on September 20, 2022, the Court granted a consented-to motion continuing the trial of the case from the November trial list to December or January for reasons unrelated to the assertion of the affirmative defense. *Order* (ECF No. 109). Thus, there is no suggestion that the assertion of the affirmative defense has delayed or will delay the case in any way or has caused Ms. Verrier any harm other than the application of Maine law to her claim.

On balance, the Court concludes that BTB has demonstrated good cause to amend its answer and there is no unfair prejudice to Ms. Verrier. *See Shervin v. Partners Healthcare Sys., Inc.*, 804 F.3d 23, 52 (1st Cir. 2015) ("A district court may relax the raise-or-waive rule when equity so dictates and there is no unfair prejudice to any opposing party").

## V.   CONCLUSION

The Court GRANTS BlueTriton Brands Inc.'s Motion for Leave to File Second Amended Answer to Plaintiff's Amended Complaint (ECF No. 103). As Ms. Verrier is not required to respond to the amended answer, the Court will not require BlueTriton Brands, Inc. to refile the amended answer which is found at ECF Number 103, Attachment 1 and the filed amended answer will become the operative answer for this case.

SO ORDERED.

                                             /s/ John A. Woodcock, Jr.
                                             JOHN A. WOODCOCK, JR.
                                             UNITED STATES DISTRICT JUDGE

Dated this 26th day of September, 2022